IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JUDY SHOTWELL,<br><br>      Plaintiff,<br><br>vs.<br><br>REGIONAL WEST MEDICAL CENTER,<br><br>      Defendant. | 4:14-CV-3210<br><br>MEMORANDUM & ORDER |

  The plaintiff, Judy Shotwell, has sued her former employer, Regional West Medical Center, under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Nebraska Fair Employment Practice Act (NFEPA), Neb. Rev. Stat. § 48-1101 *et seq.* This matter is before the Court on the defendant's motion for summary judgment. For the reasons explained below, the defendant's motion will be granted in part and denied in part.

## BACKGROUND

  The following facts are not meaningfully disputed. The plaintiff began employment with the defendant as a bill collector in 1992. Filing 40 at 2.[1] She worked in that position, and later as a Patient Access Representative, until her termination on December 2, 2013. Filing 40 at 2, 6. The parties agree that the role of Patient Access Representative is largely administrative, requiring the employee to sit for long periods of time. Filing 50-1 at 4; filing 44-1 at 2.

  The defendant had a "General Leave Policy" throughout the plaintiff's employment. Filing 40 at 2. The policy provided that the defendant "is not required to, and generally will not, reserve an employee's position beyond a total of 20 weeks leave time in a rolling 12-month period." Filing 40 at 2. Pursuant to the policy, an employee who exceeded 20 weeks leave, and whose position was not reserved, was placed on unpaid furlough status. Filing 40 at

---

[1] Pursuant to NECivR 56.1, a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1).

3. A furloughed employee who remained on the defendant's employment rolls, could reapply for other positions within the company, and was eligible for continued benefits through the defendant's long-term disability plan. Filing 40 at 2; filing 44-6.

In 2012, the plaintiff had back surgery, causing her to miss several months of work. Filing 40 at 3. She was on medical leave from November 12, 2012 until February 18, 2013, when she returned to work on a part-time basis. Filing 40 at 3. On April 18, 2013, she obtained a "return-to-work" release from her physician, which authorized her to return to full-time employment as a Patient Access Representative. Filing 40 at 3; filing 7. The plaintiff returned to full-time work on May 1, 2013. Filing 40 at 3.

On August 16, 2013, the plaintiff broke her leg. Filing 40 at 4. She underwent surgery for the injury on August 19, which required her to miss 2 weeks of work. Filing 40 at 4. While recovering from her surgery at home, she spoke with the defendant's Compensation and Benefits Manager, Eric Vardell. Filing 40 at 4. Vardell informed the plaintiff that she had exceeded 20 weeks leave, and that pursuant to the General Leave Policy, she must either quit or assume furlough status. Filing 40 at 4. The plaintiff chose to be furloughed, which Vardell said would be effective until December 1, 2013. Filing 40 at 4.

Following her conversation with Vardell, the plaintiff called the defendant's Vice President of Human Resources, Steve Hodges, seeking help. Filing 40 at 5; filing 49-1 at 53. Hodges told her that furlough could be "retro'd back and dropped" and that he would check into the matter further. Filing 40 at 5.

On September 3, 2013, Hodges notified the plaintiff by e-mail that he had reviewed her records, and that between her previous back injury and more recent leg injury, she had used up her leave benefits as of August 27. Filing 40 at 5; filing 40-8. He also wrote, however, that the defendant might reconsider its decision to place her on furlough status if it received a medical release from her physician. Filing 40 at 5.

The plaintiff obtained a work release from her physician on September 5, 2013. Filing 40 at 5; filing 40-9. The release authorized the plaintiff to return to work on a full-time basis starting September 11, 2013, as long as she remained in a wheelchair, performed only sedentary duties, and received assistance in and out of doors. Filing 40 at 5; filing 40-9. On September 9, 2013, Hodges informed the plaintiff by e-mail that he received the physician's release, and that he would review her work station "just to make sure I understand that [sic] dynamics of that physical layout and the need for assistance are reasonable." Filing 40 at 6.

Soon after receiving the e-mail, the plaintiff met with Hodges to discuss possible workplace accommodations. Filing 40 at 6. Specifically, the plaintiff informed Hodges—consistent with the physician's work release—that she could return to work in a wheelchair as long as she had help opening doors. Filing 40 at 6; filing 50-1 at 18. At the meeting, Hodges also encouraged the plaintiff to apply for long-term disability insurance through the defendant's disability provider, UNUM. Filing 40 at 6. Later that day, after the plaintiff left the meeting, she received a call from Hodges and the defendant's Chief Financial Officer, David Griffith. Filing 40 at 6. Hodges informed the plaintiff that the defendant had decided to keep her on furlough status. Filing 40 at 6. The plaintiff was formally terminated by the defendant on December 2, 2013. Filing 40 at 6.

The plaintiff filed for long-term disability insurance with UNUM on September 12, 2013, while she was still on furlough status. Filing 40 at 6-7. As part of the application, the plaintiff indicated that, with respect to her occupational duties, she "was unable to walk – stand – sit for any length of time." Filing 40 at 7 (quoting filing 40-12 at 5). UNUM approved the plaintiff's application for long-term disability, noting that she was "unable to perform the material and substantial duties of [her] regular occupation due to [her] medical condition of lumbar disc degeneration." Filing 40 at 8 (quoting filing 49-2 at 1).

The plaintiff and her doctor filed paperwork with UNUM after she was awarded benefits. On one questionnaire, filed December 26, 2013, the plaintiff informed UNUM that she stopped work the previous August "[b]ecause of my condition AND other reasons." Filing 40 at 8; filing 40-14 at 13. When prompted to explain the "other reasons," the plaintiff noted that she had been "having trouble sitting, standing, and getting around due to my back." Filing 40-14 at 13. She also claimed that, as of the previous summer, "things were getting worse" and that "it had gotten really bad and I knew I would not be able to continue my job." Filing 40 at 8 (quoting filing 40-14 at 13). Her physician, Dr. Donn Turner, responded to a questionnaire from UNUM on or around February 3, 2014, indicating that the plaintiff was unable to perform her occupational duties, which included "mostly sitting," exertion of up to 10 pounds, and brief periods of standing. Filing 40 at 9; filing 40-15 at 2.

On November 11, 2013, while the plaintiff was still on furlough status, she applied for disability benefits through the Social Security Administration ("SSA"). Filing 40 at 9. The plaintiff noted on her application that she had stopped working to due physical and/or mental conditions, and because she "was let go as due to my disabilities per RWMC missed too much work." Filing 40-13 at 5. She also stated on the application that she "received reg

- 3 -

pay and paid time off [and] extended illness bank [f]or time not allowed to work per could not work do to my disabilities." Filing 40-13 at 6. The SSA denied her claim. Filing 40 at 9.

On April 24, 2014, the plaintiff asked the SSA to reconsider its denial of her November claim. Filing 40 at 9. In addition to expressing her disagreement with the SSA's original determination, the plaintiff also stated, "my disabling condition continues and I am unable to sustain gainful work activity." Filing 40-16 at 1. The SSA granted the plaintiff's request for reconsideration and awarded her benefits. Filing 40 at 10.

After exhausting her administrative remedies, the plaintiff filed this suit.

## STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## ANALYSIS

The plaintiff alleges that the defendant failed to make reasonable accommodations for her disability, in violation of the ADA 42 U.S.C. § 12112

- 4 -

and NFEPA; that the defendant retaliated against her for requesting reasonable accommodations, in violation of the ADA, 42 U.S.C. § 12203 and the NFEPA, Neb. Rev. Stat. § 48-1114; and that the defendant discriminated against the plaintiff based on actual and perceived disabilities in violation of the ADA, 42 U.S.C. § 12112 and the NFEPA, Neb. Rev. Stat. § 48-1114.

The defendant has moved for summary judgment, arguing that the plaintiff is not a qualified individual with a disability. Filing 39. The defendant specifically contends that the plaintiff was unable to perform the essential functions of her job, with or without accommodation. Filing 40 at 12. The Court agrees. Accordingly, the defendant's motion for summary judgment will be granted on the plaintiff's failure to accommodate claim under the ADA and the NFEPA, and on her discrimination claim based on actual and perceived disabilities under the ADA and the NFEPA. *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1107 (8th Cir. 2016). But the Court will deny the defendant's motion for summary judgment with respect to the plaintiff's claim that she suffered retaliation for requesting a reasonable accommodation in violation of the ADA and NFEPA. The plaintiff need not be a qualified individual to maintain this claim, and the defendant has presented no evidence that the plaintiff lacked a good faith belief that her request for accommodation was reasonable. *See Heisler v. Metropolitan Council,* 339 F.3d 622, 632 (8th Cir. 2003).

### I. Failure to accommodate

The plaintiff alleges that the defendant failed to make reasonable accommodations for her disability in violation of the ADA, 42 U.S.C. § 12112, and the NFEPA, Neb. Rev. Stat. § 48-1111. Specifically, the plaintiff alleges that she could return to work following surgery with use of a wheelchair, filing 1 at 2, and "so long as she could get help entering the secured work area and help opening the bathroom door." Filing 1 at 3. Rather than providing these accommodations, the plaintiff contends that the defendant "put her on an unpaid furlough status as of August 28, 2014." Filing 1 at 3.

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination can include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A). With exceptions not relevant here, disability discrimination claims brought under NFEPA are analyzed under the same framework as disability discrimination claims brought under the ADA. *See*,

*Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002); *Marshall v. Eyecare Specialties, P.C. of Lincoln*, 876 N.W.2d 372, 381 (Neb. 2016).

To make a failure to accommodate claim, a plaintiff "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015). To establish a prima facie case of discrimination, a plaintiff must show that she 1) has a qualifying disability under the ADA; 2) is a qualified individual under the ADA; and 3) was subjected to an adverse employment action due to her disability. *Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016). Then, if the plaintiff establishes a prima facie case of discrimination, she must then establish a failure to accommodate her disability. *Schaffhauser*, 794 F.3d at 905.

The defendant argues that the plaintiff is not a qualified individual under the ADA. Filing 40 at 12. To be a qualified individual under the ADA, an employee must "(1) possess the requisite skill, education, experience, and training for [her] position, and (2) be able to perform the essential job functions, with or without reasonable accommodation." *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 712 (8th Cir. 2003) (internal alterations omitted) (quoting *Heaser v. Toro Co.*, 247 F.3d 826, 830 (8th Cir. 2001)).

The defendant does not dispute that the plaintiff had the requisite skill, education, experience, and training to perform her job. Filing 40 at 13. However, the defendant argues that the plaintiff was unable to perform her essential job functions, with or without accommodation, following surgery on her leg. To support its argument, the defendant points to several representations made by the plaintiff in applications for Social Security and long-term disability benefits. These statements, the defendant contends, negate an essential element of the plaintiff's ADA claim—that she was able to perform essential job functions following leg surgery. The defendant argues, in other words, that the plaintiff cannot be unable to work for purposes of Social Security disability benefits, yet able to perform the essential functions of her job under the ADA.

The Supreme Court has considered "the legal effect upon an ADA suit of the application for, or receipt of, disability benefits." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 800 (1999). In doing so, the Court has held that the law neither forecloses nor erects a special presumption against a beneficiary of disability benefits who is simultaneously pursuing a claim under the ADA. *Id.* at 805. However, the Court noted that an inherent discrepancy may exist where the plaintiff claims a "total disability or the like" for purposes of disability benefits, and an ability to perform an essential job function under the ADA. *Id.* at 807 (quotations omitted). When this occurs, the ADA plaintiff "cannot simply ignore the apparent contradiction

- 6 -

that arises out of the earlier SSDI total disability claim." *Id.* at 806. Rather, to overcome the defendant's motion for summary judgment, the plaintiff must present a sufficient explanation "to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless perform the essential functions of [her] job, with or without reasonable accommodation." *Id.* at 807 (internal quotations omitted).

Here, the defendant relies primarily on two filings by the plaintiff with the Social Security Administration that, it argues, directly conflict with the plaintiff's ADA claim.[2] First, the defendant points to the plaintiff's November 2013 application for Social Security benefits, in which she indicated she had stopped working due to physical and/or mental conditions and because she "was let go as due to [her] disabilities . . . missed too much work." Filing 40-13 at 5. The plaintiff also indicated on the application that she had received paid time off for "time not allowed to work per could not work do [sic] to my disabilities." Filing 40-13 at 6. Second, the defendant points to the plaintiff's April 24, 2014 filing with the SSA, in which she asked the Administration to reconsider its denial of her November claim. There, the plaintiff stated, "my disabling condition continues and I am unable to sustain gainful work activity." Filing 40-16 at 1.

After reviewing these facts in the light most favorable to the nonmoving party, *Torgerson*, 643 F.3d at 1042, the Court determines that the plaintiff's statements to the SSA conflict with a required element of her ADA claim—that she was able to perform her job duties with accommodation. In reaching this decision, however, the Court acknowledges that the plaintiff did not expressly state to the SSA that she was "unable to work," and that her representations therefore carry a level of ambiguity not previously addressed by the Eighth Circuit. *Cf.*, *Voeltz v. Arctic Cat, Inc.*, 406 F.3d 1047, 1050 (8th Cir. 2005) (plaintiff indicated on Social Security application that he was "unable to work"); *Lane v. BFI Waste Sys. of N. Am.*, 257 F.3d 766, 768 (8th Cir. 2001) (plaintiff stated on Social Security application that he was "unable to engage in any substantial work"); *Lloyd v. Hardin County Iowa.*, 207 F.3d

---

[2] The defendant also points to several statements by the plaintiff on applications for long-term disability benefits through UNUM that, the defendant contends, require explanation under *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999). While these statements provide contextual support for the defendant's motion, it is not entirely clear if the plaintiff is required under *Cleveland* to explain such discrepancies, assuming they exist, in those particular filings. *See, e.g.*, *Murphey v. City of Minneapolis*, 358 F.3d 1074 (8th Cir. 2004). Either way, the Court need not reach that issue because the plaintiff's statements to the SSA provide a sufficient basis for granting summary judgment on the plaintiff's failure to accommodate claim.

1080, 1082 (8th Cir. 2000) (plaintiff indicated on Social Security application that he was "totally disabled and unable to work"). But the Court examines the statements not only as they appear in the relevant filings, but also in the context they were made. *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 382 (6th Cir. 1998). And when that is done, clear discrepancies emerge.

To begin with, the plaintiff concedes that she was unable to walk following the August 19, 2013 surgery on her leg, but that she was capable of returning to work with accommodation—namely, a wheelchair. Filing 49-1 at 18. Yet the plaintiff's deposition testimony and filings with UNUM cast serious doubt as to her ability to sit. For example, in her application for long-term disability insurance, the plaintiff stated that, as a result of her medical condition, she was unable to "sit for any length of time." Filing 40-12 at 5. Similarly, in a letter to the private disability provider, the plaintiff's physician noted her inability to perform certain occupational duties, including "[m]ostly sitting."[3] Filing 40-15 at 1. And when asked at her deposition why she didn't apply for jobs with the defendant while on furlough status, the plaintiff answered, "[d]ue to the fact of me not being able to sit for any length of time." Filing 50-1 at 28.

It is against this backdrop that the Court interprets the plaintiff's statements to the SSA—particularly that her "disabling condition continues" and that she was "unable to sustain gainful work activity"—as conflicting with a required element of her ADA claim: that she was able to perform her job functions with reasonable accommodation. Filing 40-16 at 1.

Of course, the existence of a discrepancy between the plaintiff's filings with the SSA and a required element under the ADA is not, itself, dispositive of her claim. *Cleveland*, 526 U.S. at 806. Rather, the plaintiff can overcome the defendant's motion for summary judgment by explaining the discrepancy such that a reasonable jury could conclude that, despite her statements to the SSA, she "could nonetheless perform the essential functions of her job, with or without reasonable accommodation." *Id.* at 807 (internal quotations omitted).

The plaintiff proffers two reasons motivating her applications for disability benefits: "1) her employer failed to accommodate her disability[,] and 2) her employer and private disability insurer encouraged and helped her to apply for disability." Filing 43 at 13. But to the extent the plaintiff argues that her motive for filing for SSA benefits is relevant, she is incorrect. Indeed,

---

[3] The Court considers the physician's statements for contextual purposes only. *See Murphey*, 358 F.3d at 1079 (holding that a "physician's opinion does not amount to a 'sworn statement' or representation by [the plaintiff] that [s]he is totally and permanently disabled and unable to work.").

- 8 -

the Supreme Court requires not that the ADA plaintiff describe his or her motivation for filing a benefits application, but rather that he or she explains discrepancies that "negate an essential element of [an] ADA case." *See Cleveland,* 526 U.S. at 806. The plaintiff provides no such explanation, and has therefore failed as a matter of law to establish that she is a qualified individual under the ADA. *Fenney,* 327 F.3d at 712 ("[T]he plaintiff retains the ultimate burden of proving that he is a qualified individual . . . ."); *see, also, Lane,* 257 F.3d at 770 (merely stating that the plaintiff was required to apply for SSA by a private insurance provider is insufficient to survive summary judgment when statements in the SSA application conflict with the plaintiff's ADA claim).

In sum, the plaintiff's assertions to the Social Security Administration conflict with an essential element of her claim under the ADA. The plaintiff has proffered no evidence to harmonize these inconsistent statements such that a reasonable jury could conclude that she was able to perform the essential functions of her job, with or without reasonable accommodation. Accordingly, the plaintiff has failed to make out a prima facie case for failure to accommodate under the ADA, and the Court will grant summary judgment in favor of the defendant on that claim.

The complaint also alleges that the defendant placed the plaintiff on unpaid furlough status, and later terminated her employment, as a result of actual and perceived disabilities in violation of the ADA and NFEPA. Filing 1 at 4-5. To maintain this claim, however, the plaintiff must demonstrate that she is a "qualified individual" under the ADA. *Morriss,* 817 F.3d at 1107. Accordingly, the Court's summary judgment for the defendant on the plaintiff's failure to accommodate claim is also dispositive of her claim for disability discrimination under the ADA, 42 U.S.C. § 12112, and the NFEPA, Neb. Rev. Stat. § 48-1114.

## II. Retaliation

The plaintiff alleges that the defendant retaliated against her for requesting reasonable accommodations in violation of the ADA, 42 U.S.C. §12203, and the NFEPA, Neb. Rev. Stat. § 48-1114. Filing 1 at 4. Specifically, the plaintiff contends she was placed on unpaid furlough status, and later terminated, as a result of her "engaging in the protected activity of asking for reasonable accommodation for her disability in violation of the ADA." Filing 1 at 4.

The defendant has moved for summary judgment on the plaintiff's retaliation claim on the grounds that she is not a qualified individual under the ADA. Filing 39. However, the Eighth Circuit has held that an ADA plaintiff who is "adjudged not to be a qualified individual with a disability"

may nonetheless pursue a retaliation claim based on a request for accommodation "as long as she had a good faith belief that the requested accommodation was appropriate." *Heisler*, 339 F.3d at 632. The defendant has provided no evidence that the plaintiff lacked a good faith belief that her request for accommodation was appropriate. Accordingly, the defendant's motion for summary judgment on the plaintiff's retaliation claim is denied.

IT IS ORDERED:

1. The defendants' motion for summary judgment (filing 39) is granted in part and denied in part as set forth above.

2. The plaintiff's failure to accommodate claims and disability discrimination claims are dismissed with prejudice.

3. The defendant's motion for summary judgment on the plaintiff's retaliation claim is denied.

Dated this 30th day of August, 2016.

BY THE COURT:

John M. Gerrard
United States District Judge

- 10 -